UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re:<br><br>MICHAEL JOSEPH LUTZ,<br>PAMELA ADELL LUTZ,<br><br>      Debtor.[1] | Case 3:23-bk-03050-JAB<br>Chapter 11<br>Subchapter V |

## **CHAPTER 11 PLAN**

Debtor filed a voluntary petition under chapter 11 and proposes the following Plan pursuant to § 1189. Debtor is proceeding as a small business debtor under Subchapter V.

***Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)***

## ARTICLE I
## RULES OF CONSTRUCTION AND DEFINITIONS

### A. Rules of Construction

1. References to statutory sections and chapters in the Plan are references to sections and chapters of the Bankruptcy Code, unless otherwise indicated; and, references to rules are references to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

2. The rules of construction set forth in § 102 shall apply when interpreting this Plan.  They are supplemented as set forth below.

3. A plan is a document which establishes the rights of creditors and interested parties.  A plan will not be effective unless or until it is confirmed by the Court at a hearing and after a confirmation order has been entered.

4.  If any provision in this plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this plan.

---

[1] All references to "Debtor" include and refer to both of the debtors in a case filed jointly by two individuals.

    5.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

    6.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure) the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

### B. Definitions Applicable Specifically to this Plan

    The following definitions apply specifically to this plan and are in addition to the Standard Definitions set forth in this article.

    1.  The term "Debtor" or "Debtors" shall mean Michael Joseph Lutz and Pamela Adell Lutz in Case 3:23-bk-03050-JAB filed in the United States Bankruptcy Court for the Middle District of Florida.

    2.  The term "effective date of the plan" shall mean the 15th day of the second month following the date of the entry of order of confirmation which is final and non-appealable, unless otherwise ordered by the Court.

    3. The term "petition date" shall mean the date the Debtors filed a voluntary petition under subchapter V of chapter 11 on December 11, 2023.

    4.  The term "term of this plan" shall mean a term of 36 months unless extended to a maximum of 60 months in the confirmation order.

    5.  The term "Trustee" shall mean Aaron R. Cohen who was appointed as trustee pursuant to § 1183 in this case and, shall include such other person who might later be named as the trustee in this case.

### C. Standard Definitions

    The definitions set forth in § 101 shall apply when interpreting this Plan.  Those definitions are supplemented as set forth below.

    1. The term  "administrative expense claim"  shall mean a claim which is an allowed administrative expense under § 507(a)(2).

    2. The term "allowed claim" shall mean a claim:

    a. Which was documented by a proof of claim filed with the court within the applicable period of limitation fixed by Rule 3001; or

    b. Which was scheduled in the list of creditors prepared with the court pursuant to Rule 1007(b), and not listed as disputed, contingent or unliquidated as to the amount;

and,

    c. Which is not the subject of a pending objection before the court; or

    d. Which has not been disallowed by the court.

    6. The term "Bankruptcy Code" shall mean the Bankruptcy Code codified at 11 U.S.C. §101 et seq.

    7. The term "claim" shall mean any right to payment, or right to an equitable remedy, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, beneficial, secured or unsecured.

    8. The term "class" shall mean any class into which allowed claims or allowed interests are classified pursuant to the provisions of § 1122.

    9. The term "collateral" shall mean the property or interest of the Debtor or the estate which is subject to the lien, security interest or charge of a creditor holding a secured claim.

    10. The term "confirmation date" shall mean the date upon which the order of confirmation is entered by the court.

    11. The term "confirmation order" shall mean an order entered by the court confirming the plan pursuant to §1191.

    12. The term "consensual plan" shall mean a plan as to which each class of has voted to accept the plan. Whether a class has voted to accept a plan shall be determined in accordance with §1126. A class has voted to accept the plan if:

    a. The plan is accepted by creditors holding at least two-thirds in the amount and more than one-half of the number of the allowed claims in the class; or,

    b. If the rights of creditors in a class are not impaired (changed or modified).

    13. The term "Court" shall mean the United States Bankruptcy Court for the Middle District of Florida, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

    14. The term "creditor" shall mean any person or entity that has a claim against the Debtor.

    15. The term "debtor" when spelled in all lower case shall mean and refer to any person or entity concerning which a case under the Bankruptcy Code has been commenced as set forth in § 101 (13).

16.  The term "deficiency claim" shall mean the difference between the total amount of a claim and the value of any collateral securing the claim.

17.  The term "disposable income" shall mean disposable income as defined by § 1191(d).

18. The term "impaired claim" shall mean a claim that is impaired within the meaning of § 1124.

19.  The term "impaired class" shall mean a class containing only impaired claims.

20. The term "nonconsensual plan" shall mean a plan that meets all applicable requirements in § 1129(a) are met, except for those in paragraphs (8), (10), and (15), and at least one class has submitted ballots voting to reject the plan, as determined in accordance with § 1126.

21.  The term "nonpriority unsecured claim" shall mean a claim which is an allowed claim which is not secured or entitled to priority under §507(a) .

22. The term "plan" when spelled in all lower case shall mean a plan as contemplated by § 1189.

23. The term "Plan" shall mean this plan as amended and modified.

24.  The term "plan proponent" shall mean the Debtor.

25.  The term "satisfied"or "satisfaction" shall mean the payment of an allowed claim as provided for under the term of the plan, including any interest or other charges as provided for under the terms of the plan. Unless the plan specifies otherwise, an allowed claim shall be deemed satisfied, if paid in full, without interest.

26.  The term "small business debtor" shall mean a debtor who qualifies as a small business debtor under § 1182(1).

27.  The term "secured claim" shall mean an allowed claim secured by collateral, to the extent of the value of the collateral determined in accordance with § 506(a).

28.  The term "subchapter V" shall mean subchapter V of chapter 11 of the Bankruptcy Code.

29. The term "unimpaired claim" shall mean a claim that is not impaired within the meaning of § 1124.

30. The term "unimpaired class" shall mean a class containing only unimpaired claims.

## ARTICLE II
## PAYMENTS AND DURATION OF PLAN

### A. Source of Funding for Plan

1. This Plan of Reorganization under subchapter V of chapter 11 of the Bankruptcy Code proposes to pay creditors of the Debtor from future monthly income derived from the sale of assets including real property and all other monthly income including retirement and disability benefits.

### B. Amounts to Pay and Duration of Payments

1. Debtor proposes to submit all disposable income to fund the Plan and pay creditors and interested parties.  The monthly disposable income of the Debtor is **$ 7,075.00**

2. Debtor proposes a thirty six month plan with equal monthly payments.

3. The Plan contains four classes of secured claims; one class of nonpriority unsecured claims; and,  one class regarding the equity interests of the Debtor in the estate,

4. Creditors holding nonpriority unsecured claims will receive distributions, which the proponent of this Plan has valued at approximately .70 cents on the dollar.

5. Debtor estimates a total of **$ 379,400.00** will be distributed to creditors holding general unsecured claims.

## ARTICLE III
## ADMINISTRATION OF THE PLAN

### A.  Disbursement of Payments to Creditors and Interested Parties

1. If this Plan is confirmed as a consensual plan under § 1991(a), Debtor shall make all payments under the Plan.

2.  If the Plan is confirmed as a non-consensual plan § 1991(b) the Trustee shall be the disbursing agent for payments under the Plan.  However, the Trustee shall not be required to disburse payments to any unimpaired class of secured claims.

3.  If the Plan is confirmed as a consensual plan the Trustee shall be discharged upon substantial consummation of the Plan pursuant to § 1183( c).

4.  If the Plan is confirmed as a non-consensual plan, the Trustee shall be retained pursuant to § 1194(b).

### B. Compensating the Trustee

1. If the Plan is confirmed the Trustee may seek compensation by periodically filing a fee application based upon a reasonable hourly rate for services rendered during a specific period of time; or, as otherwise provided in the confirmation order.

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE CLAIMS

### A. Treatment of Administrative Claims
### if Plan is Confirmed as a Consensual Plan

1. If the Plan is confirmed as a consensual plan, administrative expense claims shall receive the treatment set forth below.

2. The Trustee shall be compensated for services provided on an hourly basis or such other method approved by the Court.

3. The Trustee may file an application for fees and expenses which itemizes the amount sought as an administrative expense claim under §503 and is allowable in accordance with the provisions set forth in §330.

4. Any allowed administrative expense claim held by the Trustee shall be paid in full on or before the effective date of the plan in cash, if available, and if not, prior to payments being made under the Plan to satisfy any other administrative expense claim, or priority claim or nonpriority unsecured claim.

5. Legal counsel shall file a fee application for legal fees and costs for the purpose of determining an allowable administrative expense claim.

6. Any allowed administrative expense claim held by Legal Counsel shall be paid in full on or before the effective date of the plan in cash, if available and if not, prior to payments being made under the Plan to satisfy any priority claims afforded priority under §507(8) or nonpriority unsecured claim.

7. Article XI of the Plan contains a budget which designates 10% of the disposable income of the Debtor (the "Designated Amount") to pay administrative expense claims. If the required amount to satisfy allowed administrative expense claims is less than the Designated Amount, any excess amount shall be paid first to creditors holding claims in any class of priority claims and, thereafter, shall be paid to creditors holding claims in any class containing nonpriority unsecured claims.

8. If the allowed administrative claims are more than the Designated Amount, any deficit shall be deducted from amounts to be paid to creditors holding claims in any class containing nonpriority unsecured claims.

9. Administrative expense claims shall not be paid over the life of the plan only if the Plan is confirmed as a consensual plan.

### B. Treatment of Administrative Claims if Plan is Confirmed as a Non-Consensual Plan

1. If the Plan is confirmed as a non-consensual plan, administrative expense claims shall receive the treatment set forth below.

2. The Trustee shall be compensated for services provided on an hourly basis or such other method approved by the Court.

3. The Trustee may file an application for fees and expenses which itemizes the amount sought as an administrative expense claim under § 503 and is allowable in accordance with the provisions set forth in § 330.

4. For services provided by the Trustee after entry of a confirmation order

5. Any allowed administrative expense claim held by the Trustee shall be paid in full on or before the effective date of the plan in cash, if available, and if not, prior to payments being made under the Plan to satisfy any other administrative expense claim, or priority claim or nonpriority unsecured claim.

6. Legal counsel shall file a fee application for legal fees and costs for the purpose of determining an allowable administrative expense claim.

7. Any allowed administrative expense claim held by Legal Counsel shall be paid in full on or before the effective date of the plan in cash, if available and if not, prior to payments being made under the Plan to satisfy any priority claims afforded priority under § 507(8) or nonpriority unsecured claim.

8. Article XI of the Plan contains a budget which designates 10% of the disposable income of the Debtor (the "Designated Amount") to pay administrative expense claims. If the required amount to satisfy allowed administrative expense claims is less than the Designated Amount, any excess amount shall be paid first to creditors holding claims in any class of priority claims and, thereafter, shall be paid to creditors holding claims in any class containing nonpriority unsecured claims.

9. If the allowed administrative claims are more than the Designated Amount, any deficit shall be deducted from amounts to be paid to creditors holding claims in any class containing nonpriority unsecured claims.

10. Administrative expense claims shall not be paid over the life of the plan if the Plan is confirmed as a consensual plan.

# ARTICLE V
# CLASSIFICATION OF CLAIMS AND INTERESTS

All claims are classified under the Plan, except administrative expense claims.

**Class 1 - Secured claims of Fifth Third Bank - Dunnellon Residence**

**Class 2 - Secured Claims of Fifth Third Bank, N.A. -Residential Home in Jackson, Michigan**

**Class 3 - Secured and Unsecured Claims of First National Bank of Pennsylvania**

**Class 4 - Secured Claim of Chevron Federal Credit Union**

**Class 5 - Non-Priority Unsecured Claims**

**Class 6 - Equity Interest of the Debtor in the Estate**

# ARTICLE VI
# TREATMENT OF CLASSIFIED CLAIMS

**Class 1- Secured Claims of Fifth Third Bank N.A. - Residential Home in Dunnellon, Florida**

1. This class is the allowed secured claims of Fifth Third Bank with respect to a residential property owned by the Debtors in Dunnellon, Florida.

2. Fifth Third Bank N.A. filed Claim 7 as a secured claim in the amount of $105,941.01. The collateral is a residential home and lot located at 9965 SW 206th Circle, Dunnellon, Florida.

3. The collateral is the homestead of Debtor.

4. The rights of Fifth Third Bank in this class shall remain unaltered and all provisions of the note, mortgage and associated documents shall remain in full force and effect. Further, this creditor shall continue to receive the monthly regular payments until this mortgage obligation is satisfied.

5. The current monthly payment to this class is $1,155.00.

6. Fifth Third Bank shall retain its lien in its collateral in this class. This is an unimpaired class

## Class 2- Secured Claims of Fifth Third
## Bank, N.A. -Residential Home in Jackson, Michigan

1. This class is the allowed secured claims of Fifth Third Bank with respect to a residential property owned by the Debtors in Residential Home in Jackson, Michigan.

2. Fifth Third Bank N.A. filed Claim 6 as a secured claim in the amount of $68,767.45. The collateral is a residential home and lot located at 2205 Cooper City in Jackson, Michigan.

4. The collateral will be sold at auction or real estate broker as described in Article IX of the Plan.

5. The rights of Fifth Third Bank shall remain unaltered and all provisions of the note, security agreement mortgage and associated documents shall remain in full force and effect. Further, this creditor shall continue to receive the monthly regular payments until such time as the mortgage s satisfied.

6. The current monthly payment to this class is $1,170.00.

7. This is an unimpaired class.

### Class 3- Secured and Unsecured Claims of First National Bank of Pennsylvania

1. This class is the allowed secured claims and unsecured claims of First National Bank of Pennsylvania.

2. This class is comprised of mortgages second in priority to the mortgage liens of Fifth Third Bank. Those properties are described above as 9965 SW 206th Circle, in Dunnellon, Florida and, 2205 Cooper City in Jackson, Michigan.

3. First National Bank of Pennsylvania filed Claim 8 in the total amount of $1,237,814.72. The proof of claim indicates this creditor holds a secured claim in the amount of $462,178.01 which leaves a general unsecured claim in the amount of $775,636.71.

4. This creditor shall receive all excess proceeds from the sale of the property located at 2205 Cooper City in Jackson, Michigan after satisfaction of closing costs and satisfaction of the Claim 6 held by Fifth Third Bank.

5. An unencumbered real property owned by Debtors which is located at 9008 Marsh Creek Trail in Grayling, Michigan shall also be sold at auction or by real estate broker at the same time as the property located at 2205 Cooper City in Jackson, Michigan. All net proceeds shall be paid to First National Bank of Pennsylvania.

6. On the effective date of the plan Debtors shall commence making payments

in the amount of $1,000.00 which shall continue on the same day of each successive month for 36 months.

### Class 4 - Secured Claim of Chevron Federal Credit Union

1. Chevron Federal Credit Union filed Claim 4 as a totally secured claim in the amount of $22,186.39. The amount of the claim is listed as the value of the collateral.

2. The claim is secured by solar panels. Debtors have no objection to the valuation of the collateral as equals to total amount of the claim.

3. The collateral securing Claim 4 shall be surrendered in full satisfaction of Claim 4.

4. This is an unimpaired class.

### Class 5 - Non-Priority Unsecured Claims

1. This class is comprised Non-Priority Unsecured Claims except for the general unsecured claims of First National Bank of Pennsylvania.

2. Distributions to this class shall commence on the effective date of the Plan.

3. This class shall be paid all of the excess disposable income after all payments are made to allowed administrative claims and classes comprised of priority claims and, secured claims each month.

4. There are an estimated $240,000.00 in claims in this class.

5. This class is designated to receive **$7,075.000** each month in the Budget set forth in Article XI, however, the monthly distribution will increase or decrease based on the amount of allowed administrative claims as set forth in Article IV of the Plan.

6. This is an impaired class.

### Class 6 - Equity Interest of Debtor in the Estate

1. This class is comprised of the equity interests in the estate held by Debtors.

2. The rights of Debtors in this class shall remain unaltered and unchanged.

3. This is an unimpaired class.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

1. The following are possible executory contracts:

a. Cox Business; and,

b. CSU Producer Resources Inc.

2. Debtors are unaware of any unexpired leases.

3. To the extent any executory contracts or unexpired leases exist they are rejected.

## ARTICLE VIII
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

### A. Disputed Claims

1. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

a. A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

b. No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

### B. Delay of Distribution on a Disputed Claim

1. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

2. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019.

### ARTICLE IX: MEANS FOR IMPLEMENTATION OF THE PLAN

### A. Plan Implementation Requirements

1. Under § 1123 a plan is require to provide adequate means for its implementation.

### B. Means of Implementation for this Plan

1. Debtors owned a franchise restaurant which failed. The corporate entity operating the franchise and owned by Debtors was Kicking Grass Properties LLC.  First

National Bank of Pennsylvania has a first priority lien on the assets of the corporate entity.  Debtors will assist First National Bank of Pennsylvania in liquidating the assets of the corporate entity.  That will likely generate slightly more than $60,000.00.

2.  The Plan provides for the sale of two residential homes in Michigan owned by the Debtors.  First National Bank of Pennsylvania will have the option to sell the two properties by real estate broker or auction.

3.  The property located at 2205 Cooper City in Jackson, Michigan is encumbered by a first mortgage held by Fifth Third Bank, N.A. and is represented by Claim 6 in the claims register in the amount of $68,767.45. All excess proceeds will be applied to partially satisfy Claim 8 held by First National Bank of Pennsylvania which holds a second mortgage.  The total amount of Claim 8 is $1,237,814.72

4.  The otherwise unencumbered real property owned by Debtors which is located at 9008 Marsh Creek Trail in Grayling, Michigan shall also be sold at auction or by real estate broker at the same time as the property located at 2205 Cooper City in Jackson, Michigan. All net proceeds shall be also paid to First National Bank of Pennsylvania.

3.  The revenues used to fund this Plan will also be derived by Debtors from disability and retirement funds which are in the gross amount of $10,525.00 each month.

# ARTICLE X
# DISCHARGE

## A. Discharge If Confirmation Is of a Consensual Plan

Debtor shall be entitled to a discharge if this Plan is confirmed as a consensual plan under the provisions of  § 1191(a) and, after a certificate of substantial consummation has been filed by the Debtor.

## B. Discharge If Confirmation Is of a Non-Consensual Plan

Debtor shall be entitled to a discharge if this Plan is confirmed as a non-consensual plan under the provisions of § 1191(b) only after the Debtor has paid all payments required under the plan (which must equal the disposable income of the Debtor) within the first three years of the Plan, or such longer period not to exceed five years as the Court may fix.

# ARTICLE XI
# DISCLOSURE INFORMATION

## A.  Purpose of Disclosure

Pursuant to § 1190, a plan filed under Subchapter V is required to contain, among other things, the following information: a brief history of the business operations of a

debtor; a liquidation analysis; and projections with respect to the ability of a debtor to make payments under the plan. Further, the plan must provide for the submission of all or such portion of the future earnings or other future income of a debtor to the supervision and control of the trustee as is necessary for the execution of the plan. The disclosures in this article of the Plan are for the purpose of satisfying those requirements.

### B. History of Business Operations.

1. Debtors were franchise restaurant owners and operators. They owned a corporate entity known as Kicking Grass Properties LLC. The corporate entity owned a Crave Hot Dogs & BBQ franchise which operated for less than six months in Ocala, Florida. The restaurant was closed on the Petition Date.

2. The restaurant was never really able to get up and fully operational due to construction delays and was never profitable.

3. The business is or was primarily financed by First National Bank of Pennsylvania which arranged an SBA backed loan in the principal amount of $1,286,000.00.

4. The corporate entity soon defaulted on the loan by their primary lender due to lack of business construction delays.

.

### C. Liquidation Analysis

1. This is a liquidation analysis for the bankruptcy estate in this case. It indicates that **$266,310.00** would be available to pay the general unsecured claims of the estate, without taking into account of the administrative expense of liquidating the assets. The information contained in this analysis is from what was available from the current financial records of Debtor on the date of this Plan.

2. An analysis of general unsecured claims of the **Debtors** after a review of the schedules and proofs of claims filed in the case indicate there are $1,145,650.00 in allowed general unsecured claims in the .

**ASSETS**

**Florida Real Estate**

*9965 SW 206th Circle*
*Dunnellon, Florida*

| | | |
|---|---|---|
| Market Value[2] | $321,375.[3] | |
| Secured Claim<br>Fifth Third Bank<br>Claim 7-1 | [$186,755] | |
| Secured Claim<br>First National Bank<br>of Pennsylvania<br>Claim 8-1 | [$134,620] | |
| **Net Equity** | **$00000** | |

**Michigan Real Estate**

*2205 Cooper Street*
*Jackson, Michigan*

| | | |
|---|---|---|
| Market Value | $215,600 | [4] |
| Secured Claim<br>Fifth Third Bank<br>Claim 6 | [$ 68,770] | |
| Secured Claim<br>First National Bank<br>of Pennsylvania<br>Claim 8-1 | [$146,830] | |
| **Net Equity** | **$000000** | |

*9008 Marsh Creek Trail*
*Grayling, Michigan*

| | |
|---|---|
| Market Value | $208,400 |
| **Net Equity** | **$208,400** |

---

[2] Amounts have rounded to the nearest $5.00.

[3] Based on the records of the property appraiser for Marion County, Florida on the date of this Plan.

[4] Based on Zillow as of date of plan

**Motor Vehicles and Household Goods**

2017 Ford F350

| | |
|---|---|
| Market Value | $12,000 |
| Exemption | [$ 2,000] |

2012 Chevrolet Traverse
Market Value                $ 3,000

2000 Ford F-450
Market Value                $ 3,000

1988 Ford LGT Convtnl
Market Value                $    200

John Deer Tractor
Model 770
Market Value                $ 1,500

2003 John Deer
Gator
Market Value                $ 1,500

2018 Legend Trailer
Market Value                $ 5,000

Household Goods           $ 1,600

Cash Accounts              $ 34,110
Exemption                   [$ 2,000]

**Net Equity**                               **$ 57,910**


*Total Non-Exempt Amount*        **$266,310.00**

### C. Budget Analysis

1. The following are income and expense projections for the Debtors. This is a pro forma operating budget for an average month. The income and expenses are not expected to change over the proposed 36 months of the Plan.

2. The purpose of the projections is twofold: first, it demonstrates that Debtors

are dedicating all disposable income as required by § 1191(c)(2)(A) ; and second, it demonstrates the ability of the Debtors to make all payments under the Plan as required by § 1191(c)(3)

    3. Disposable income is defined under § 1191(d) to mean -

> "the income that is received by the debtor and that is not reasonably necessary to be expended—
> (1)for—
> (A)the maintenance or support of the debtor or a dependent of the debtor; or
> (B)a domestic support obligation that first becomes payable after the date of the filing of the petition; or
> (2)for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor."

    3. Information was gathered by interviewing the Debtors and reviewing the schedules and monthly operating reports filed in these cases.

    4. Living Expenses set forth in the Budget are asserted to be reasonably necessary and meet the definition set forth in § 1191(d)(1).

    5. The amount budgeted for Administrative Expenses is 10% of the amount which will be distributed by the Trustee and does not take into account the payments to be made directly by Debtor to any unimpaired class.

    6. The disposable income of the Debtors is reflected as the Monthly Plan Payments set forth in the Budget.

### Budget

*Income*

| | |
|---|---|
| Social Security Benefits | $ 4,625[5] |
| VA Disability Benefits | $ 3,825 |
| Pension Income | $ 2,425 |
| Income Taxes | [$ 350] |

---

[5] Amounts in the Budget have been rounded to the nearest $5.00

|   |   |
|---|---|
|   | **$10,525** |
| ***Expenses*** |   |
| HOA Fees | [$   250] |
| Utilities | [$   400] |
| Food and Housekeeping Supplies | [$1,000] |
| Clothing, Laundry, and Dry Cleaning | [$   100] |
| Personal Care Products and Services | [$   100] |
| Medical Expenses | [$   100] |
| Transportation | [$   850] |
| Entertainment and Recreation | [$   250] |
| Vehicle insurance | [$   400] |
|   | [$3,450] |
| **Disposable Income** | **$7,075** |
| ***Monthly Plan Payments*** |   |
| Administrative Expenses Claims | [$1,000][6] |
| Class 1- Fifth Third Bank N.A. | [$1,155] |
| Class 2- Fifth Third Bank N.A. | [$1,170][7] |

---

[6] It is believed that cash on hand will be sufficient to satisfy all administrative claims at confirmation unless there is protracted litigation.  Administrative claims for the law firm representing the Debtors and administrative claims of the Chapter 11 Trustee are projected to be less than $20,000.00.  Debtor has on hand in excess of $34,000 in cash accounts on the date of the Plan.

[7] The claims in Class 2 are expected to be satisfied within four months of the effective date of the Plan.  Thereafter, these funds will be paid to claim in Class 5.

| | |
|---|---|
| Class 3 - First National Bank of PA. | [$1,000] |
| Class 4- Chevron Federal C.U. | [$   000] |
| Class 5 - Non-Priority Unsecured | [$2,750] |
| **Total Plan Payments** | [$7,075] |

**This Plan is Dated March 11, 2024.**

**Debtor:**

/s/ Michael Joseph Lutz
MICHAEL JOSEPH LUTZ

**Debtor:**

/s/Pamela Adell Lutz
PAMELA ADELL LUTZ

**RICHARD A. PERRY, P.A.**
Law Practice

/s/ Richard A. Perry
RICHARD A. PERRY
Fla. Bar No. 394520
820 East Fort King Street
Ocala, FL 34471-2320
(352)732-2299
richard@rapocala.com
Attorney for Debtors